No. 90-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

FLORIAN EBERL and GEORGE ULRICH
d/b/a STARLINE BRAUNVIEH,

        Plaintiffs and Appellants,

    v.

WAYNE SCOFIELD, an individual; AMERICAN
AGRINOMICS, a Missouri corporation;
HOLLAND RANCH COMPANY, a Montana corpora-
tion; and BEAVERHEAD LIVESTOCK AUCTION,
a Montana corporation,

        Defendants and Respondents.

---

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Max A. Hansen, Esq., Dillon, Montana

        For Respondents:

        Thomas R. Scott, Esq., Dillon, Montana (Beaverhead
          Livestock Auction)
        William M. Kebe, Jr., Esq., Johnson, Skakles & Kebe,
          Butte, Montana (American Agrinomics)
        John W. Larson, Esq., Missoula, Montana (Holland
          Ranch Company)

---

Submitted on Briefs:  August 7, 1990

Decided:  September 18, 1990

Filed:

_____
Clerk

FILED
'90 SEP 18 AM 9 39
ED SMITH, CLERK
MONTANA SUPREME COURT

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs Eberl and Ulrich brought this suit in the District Court for the Fifth Judicial District, Beaverhead County, to recover seventeen purebred Braunvieh bulls or the value thereof, plus related damages. The court granted the motion of Beaverhead Livestock Auction for summary judgment on the claim against it. Plaintiffs obtained certification of that ruling under Rule 54(b), M.R.Civ.P., and appealed. We affirm.

The issues are:

1. Did the District Court err in granting Beaverhead Livestock Auction's motion for summary judgment?

2. Did the court err in striking the affidavit of Wayne Scofield?

3. Did the court err in allowing the Montana Department of Livestock to file an amicus curiae brief?

The plaintiffs live in Alberta, Canada. They do business as Starline Braunvieh, raising and selling purebred Braunvieh cattle. In March 1987, defendant Scofield, then a resident of Montana, negotiated with plaintiffs for the purchase of forty-four purebred Braunvieh bulls. Fourteen of the bulls were selected from plaintiffs' stock in Canada, three were shipped from plaintiffs' Idaho stock, and plaintiffs helped Scofield locate the rest of the bulls from other Canadian sellers.

2

Scofield provided plaintiffs with business cards indicating that he was an employee of American Agrinomics. He told them that he was authorized to buy the bulls for Holland Ranch Company, located outside Dillon, Montana. Scofield obtained plaintiffs' agreement that the purchase price for the bulls Starline Braunvieh sold him would not be paid until one week after the bulls were delivered to Montana. Plaintiffs did not, however, convey title to the bulls to Scofield.

On April 3, 1987, the forty-four bulls were shipped to Beaverhead Livestock Auction (BLA) in Dillon, Montana. The other sellers required payment for their bulls before the bulls were unloaded. BLA paid those sellers with the understanding that Scofield would reimburse it.

The bulls were checked into the yard by Jack Ripley, a State Department of Livestock inspector. Ripley indicated on his inspection reports that payment for the bulls should be delivered to the shipper, Scofield.

Scofield transported twenty-four of the bulls to Holland Ranch Company but Holland Ranch Company then determined that it could not pay the purchase price Scofield had promised. Those bulls were returned to BLA and resold at a lower price through the ring. The buyers of the remaining bulls also paid less than the purchase price Scofield had promised plaintiffs. After BLA deducted its commission and costs and the money Scofield owed for

3

the bulls of the other sellers from the money paid for the bulls, only about $1,000 remained. Plaintiffs have never been paid for the bulls, which they value at $26,000.

Plaintiffs brought this suit in June 1987. Their claim against BLA is that BLA should have held the proceeds of the sale of their bulls for them, the rightful owners. Following discovery, BLA moved for summary judgment, which was granted in an omnibus order from which the plaintiffs appeal.

## I

Did the District Court err in granting Beaverhead Livestock Auction's motion for summary judgment?

Plaintiffs argue that genuine issues of material fact exist which preclude summary judgment for BLA. Specifically, they argue that there is a question as to whether BLA had a duty to determine who owned the bulls before it made payment of the proceeds of sale. They cite § 81-8-233, MCA:

> A livestock market is liable to the rightful owner of all livestock sold for the net proceeds for such livestock whether or not the rightful owner was known to the market at the time of the sale.

The depositions on file indicate that the longstanding practice in Montana is that a livestock market pays the proceeds of a cattle sale according to the directions of the state livestock inspector, who investigates title to the animals. Section 81-3-203(1), MCA, requires that a state livestock inspector must issue

4

a certificate of inspection as to any livestock for sale, stating that the livestock is being sold by the rightful owner or person with lawful right of possession. Section 81-8-231(3), MCA, provides that the Department of Livestock shall

> supervise and regulate livestock markets in all matters affecting the relationship between the livestock market and owners of livestock and between the livestock market and purchasers of livestock.

Section 81-8-261, MCA, provides that livestock sold at a livestock market may not be delivered to a purchaser until the purchaser has received an inspection certificate stating that the state livestock inspector is satisfied as to the ownership of the livestock.

In his deposition, state livestock inspector Jack Ripley stated that he determined that title to the bulls was in Scofield because the cattle were shipped to him. "When you ship the cattle from you to me and it shows shipped to, we understand, off of our Canadian records, that that means that the guy down here has title to the cattle." He stated that his determination was in accord with an unwritten policy which had existed in the Department of Livestock since at least 1963.

We conclude that any duty of BLA to go beyond the directions of the state inspector in ascertaining the name of the true owner of cattle would conflict with the statutory scheme. Accordingly, we conclude that the term "rightful owner" in § 81-8-233, MCA,

5

refers to the owner as determined by the Montana Department of Livestock. We therefore conclude that the District Court was correct in stating that all of the evidence indicates that BLA has fully complied with the applicable laws and rules. We hold that the court did not err in granting BLA's motion for summary judgment.

## II

Did the court err in striking the affidavit of Wayne Scofield?

The District Court ordered stricken an affidavit by Scofield which plaintiffs had submitted. The court stated that "[t]he allegations therein contain no admissible evidence as to any genuine issue of material fact as between Plaintiffs and [BLA]." Plaintiffs argue that the court should have considered the affidavit in ruling on the summary judgment motion, because the affidavit met the criteria of Rule 56, M.R.Civ.P.

Rule 56(e), M.R.Civ.P., provides that

> [s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

We have reviewed the proposed affidavit of Scofield, containing his statement concerning the circumstances surrounding the sale of the bulls. We conclude that the District Court was correct in ruling that Scofield did not therein make any statements which were of his

6

personal knowledge and related to the issue on which summary judgment was granted. All his statements relating to that issue were hearsay. We therefore hold that the District Court did not err in striking Scofield's affidavit.

III

Did the court err in allowing the Montana Department of Livestock to file an amicus curiae brief?

The District Court, in allowing the Montana Department of Livestock to file its amicus brief, stated that:

> The Court finds that this brief and its supporting exhibits to be relevant to the principal issues as between Plaintiffs and the Defendant BEAVERHEAD LIVESTOCK AUCTION and has been adopted by the latter in support of its motion for summary judgment.
>
> The amicus motion and brief is fully within the intent and purpose of a long established procedure therefor. It gives the Court invaluable information on a question of law in respect to which the Court was doubtful and especially from one who, in the Court's judgment, should have been a named defendant under Plaintiffs' various theories of liability.

Plaintiffs argue that the amicus brief was untimely, was not supported by the rules, and was inaccurate. They point out that the brief was filed less than three weeks prior to the trial date and almost two months after the pretrial motion deadline. Plaintiffs assert that it should be stricken.

The Montana Rules of Civil Procedure and the Uniform District Court Rules neither provide for nor prohibit the use of briefs by

7

amicus curiae in the district courts. This Court has stated that "[t]he right to be heard as amicus curiae is within the discretion of the court." State v. Bonner (1950), 123 Mont. 414, 420-21, 214 P.2d 747, 751. In this case, we conclude that it was within the District Court's discretion to allow the brief of the Montana Department of Livestock to be filed.

The inaccuracies reported in the amicus brief concern conclusions drawn from a letter written by the Head of the Regulatory Services Branch of the Animal Industry Division of Alberta Agriculture. The conclusions were that the documents conveyed with plaintiffs' bulls effectively conveyed title to the bulls to Scofield. Because our holding that it was not error to grant summary judgment for BLA is based on the absence of a duty of BLA to determine the true owner of the bulls in contradiction to the determination of the Montana Department of Livestock, we conclude that this argument is irrelevant.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
             Justices