No. 00-207

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 119

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LAURENCE E. THOMPSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Teton,

The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles M. Joslyn, Attorney at Law, Choteau, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Joe Coble, Teton County Attorney, Choteau, Montana

Submitted on Briefs: March 22, 2001

Decided: July 17, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The State of Montana filed an Information in the District Court for the Ninth Judicial District in Teton County, charging Laurence Thompson with sexual assault of his minor daughter, a felony in violation of § 45-5-502, MCA. Following trial by jury, Thompson was found guilty of sexual assault. Thompson appeals his conviction. We affirm the judgment of the District Court.

¶2 The following issues are presented on appeal:

¶3 (1) Did the District Court err when it had testimony read to the jury after the jury had begun deliberations?

¶4 (2) Did the District Court err when it allowed evidence of the victim's behavior which demonstrated victimization prior to the date of the offense alleged in this case?

¶5 (3) Is the defendant entitled to relief for the state's failure to disclose exculpatory evidence?

¶6 (4) Was the evidence sufficient to support the defendant's conviction?

## FACTUAL BACKGROUND

¶7 The defendant, Laurence Thompson and his common law wife, Nyna, have two young daughters. Their eldest daughter, NT was four years old at the time of the trial. Nyna is employed as a Certified Nurses Aide at the Teton Medical Center. Terri Cuthbert is a registered nurse with the Teton County Health Department. Nyna spoke with Terri Cuthbert regarding her concern for NT's behavior when Cuthbert met Nyna at the Women, Infants and Children clinic. Cuthbert asked Nyna whether she would be interested in taking part in Cuthbert's program. The goals of the program are to identify problems

within the family and then educate the parents about the appropriate discipline. In early 1998, Cuthbert began working with the Thompson family.

¶8 During a home visit, Cuthbert observed NT engaged in sexual self stimulation. Nyna explained that this behavior had been occurring for awhile. Cuthbert suggested to Nyna that the family receive counseling. Although Nyna agreed to the counseling and Cuthbert made appointments, all the appointments were either missed or cancelled.

¶9 Patti Jacobs, a social worker for the Department of Health and Human Services, responded to Cuthbert's referral and went to the Thompson home to meet with the family. The family again agreed to participate in counseling.

¶10 Rebecca Maphies was referred by the Department of Public Health and Human Services to the Thompson family. Maphies was a mobile therapist who worked with families at their homes in an effort to avoid removing the children from their homes. Maphies also became concerned about sexual abuse after observing NT. NT made repeated sexually explicit comments to Maphies which were not appropriate for a child of her age. Maphies reported these findings back to Jacobs.

¶11 Based on this information, Jacobs removed NT and her younger sister from the Thompson home and put them in foster care. Jacobs placed NT in the Head Start program and referred her to a therapist for counseling and a doctor for a physical examination. Dr. Nancy Maynard is a pediatrician at the Great Falls Clinic. On September 24, 1998, she examined NT but did not find any physical evidence of sexual abuse. However, in her experience, most physical examinations are inconclusive when fondling is involved. She examined NT for a second time in February, 1999, and although she observed redness around the vaginal area, she could not reach a conclusion based on this observation.

¶12 While in foster care, the children visited their grandparents during the first part of November in 1998. Nyna and Larry spent the week at the house with them. While there, Nyna and her stepfather worked nights while Larry stayed home with the children. When NT returned to foster care, her foster mother noticed a distinct difference in her behavior - she was much more withdrawn and quiet.

¶13 On November 24, 1998, the State of Montana filed an Information charging Thompson with the felony sexual assault of his minor daughter, in violation of § 45-5-502, MCA. The information alleged that the incident occurred on November 5, 6 or 7, during

NT's visit with her grandparents. A jury trial was held on September 26 and 27. The jury found Thompson guilty as charged.

## DISCUSSION

## ISSUE ONE

¶14 Did the District Court err when it had testimony read to the jury after the jury had begun deliberations?

¶15 During deliberations, the jury sent a note to the Court in which it asked for a copy of NT's testimony. The judge replied that the Court could not repeat the testimony after deliberations had begun because it would place undue emphasis on the testimony. The jury sent another note to the court, explaining their reasons for requesting NT's testimony. The note reported that NT spoke too softly during the hearing, and several members of the jury were unable to hear the testimony. Upon reconsideration, the judge determined that NT's testimony included both exculpatory and inculpatory testimony and, therefore, was beneficial to both parties. The court decided to allow the jury to hear the testimony of NT. That decision was discussed with the parties' attorneys and no objections were made at the time. The judge sent a note to the jury, cautioning them not to give more weight to NT's testimony than any other testimony from the trial. The court reporter then read NT's testimony from her notes.

¶16 We review a district court's decision to allow or disallow a jury's request to re-hear testimony for an abuse of discretion. *State v. Harris* (1991), 247 Mont. 405, 808 P.2d 453.

¶17 Thompson claims that the Court erred when it allowed the testimony to be read to the jury. He contends that allowing the jury to hear NT's testimony after deliberations had began violates § 46-16-503, MCA. Section 46-16-503 provides:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

¶18 Pursuant to § 46-16-503, it is within the discretion of the court to determine whether

the jury should rehear the testimony. When, as in this case, the jury could not hear NT when she spoke in the courtroom and her testimony was an essential part of the case, including evidence favorable to both parties, we conclude that the District Court did not abuse its discretion when it allowed the jury to hear NT's testimony during deliberations.

## ISSUE TWO

¶19 Did the District Court err when it allowed evidence of the victim's behavior which demonstrated victimization prior to the date of the offense alleged in this case?

¶20 The State introduced testimony from Rebecca Maphies and Terri Cuthbert, two of the counselors that observed NT. Cuthbert testified that she observed NT engaged in sexual self-stimulation. Maphies testified to several sexual comments that NT made toward Maphies. These comments led to Maphies' recommendation that the children be removed from the household.

¶21 Thompson argues that the District Court erred when it allowed the State to admit the testimony because it pertained to events which occurred before the assault he was accused of and was therefore not probative of any fact in issue. He also contends that even if the evidence is relevant, it should still have been excluded as prejudicial and confusing pursuant to Rule 403 of the Montana Rules of Evidence. Finally, Thompson asserts that the evidence violated Rule 404(b), M.R. Evid., and our decision in *State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52, because it inferred prior bad acts on his part and the procedural requirements of *Matt* were not complied with. At trial, however, no objection was made on the basis of Rule 404(b) or the procedural requirements of *Matt*. The only objection to Cuthbert's testimony was that it was irrelevant. The objection to Maphies' testimony was based on hearsay and relevance. Therefore, Thompson's objection based on Rule 404(b) was waived and cannot be considered on appeal. Furthermore, Thompson's objection based on hearsay has not been argued on appeal. Therefore, we limit our discussion to whether the evidence was irrelevant or prejudicial.

¶22 Evidence is relevant if it tends to make a material fact more or less probable. Rule 401, M.R.Evid. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Cuthbert and Maphies' testimony described the abnormal behavior exhibited by NT which led to her removal from the household and

ultimately, the incident in question.

¶23 During Cuthbert's testimony, she described her observations of sexual self-stimulation by NT. She testified that she discussed these problems with Nyna who, despite being previously aware of them, failed to do anything about them. Cuthbert made several appointments for the family to see a counselor. During cross-examination Thompson's attorney asked her how the defendant was connected with any of the actions that Cuthbert described. She stated that Thompson was out of the state at the time she made her observations. She described no connection.

¶24 Maphies also testified that she noticed abnormal behavior by NT and that NT made several inappropriate sexual comments to Maphies. She testified that she did not discuss her concerns with the Thompsons because it was not her job to investigate. She also described Laurence Thompson's failure to react to NT's comments although he was in a position to hear them. Based on her observations, she recommended to Jacobs that both children be removed from the home. On cross-examination, she testified that NT's actions were characteristic of someone who had been sexually abused but that she made no determination of who was responsible.

¶25 Neither witness offered any opinion of who might be responsible for NT's behavior. The witnesses merely stated their observations of the victim and how these observations led to the removal of the children from their home. The State contends that the evidence was relevant to show why the children were removed from the home and that the child's behavior did not concern either parent. However, the child's behavior before November of 1999, the month during which the assault was alleged to have occurred, and the fact of the childrens' removal from the home prior to that date, did not make the act charged more likely unless we first assume that the behavior resulted from acts of abuse by Thompson and second that prior bad acts make the acts charged more likely. There is no evidence that the children's behavior was caused by Thompson and we know from Rule 404(b) that whether or not prior bad acts make the charged conduct more likely, the probative value of admitting the evidence is generally outweighed by the prejudicial effect. Therefore, we conclude that the evidence was irrelevant to the issue being tried and that the District Court erred when it admitted evidence of NT's conduct which occurred prior to the conduct charged. However, we will not reverse a conviction based on evidentiary error unless the error affected the substantial rights of the defendant. *State v. Berosik*, 1999 MT 238, ¶ 20, 296 Mont. 165, ¶ 20, 988 P.2d 775, ¶ 20. *See also,* § 46-20-701(2), MCA, ("[a] ny error, defect, irregularity, or variance that does not affect substantial rights must be

disregarded").

¶26 Here we conclude that the evidence was merely cumulative and, therefore, did not affect the substantial rights of the defendant. The objectionable inference from the evidence was that NT had been sexually abused. However, Thompson conceded as much through the witnesses called on his behalf.

¶27 Barbara Bottomly, a licensed clinical counselor to whom NT was referred by Thompson's attorney, independently concluded that NT had experienced sexual abuse and so stated during her testimony. Furthermore, Nyna, NT's mother, testified to her belief that NT had been sexually abused, although by someone other than Thompson.

¶28 We conclude that although irrelevant, Cuthbert's and Maphies' testimony merely illustrated facts which were not in dispute and therefore did not affect Thompson's substantial rights and are not grounds for reversal of his conviction.

## ISSUE THREE

¶29 Is the defendant entitled to relief for the state's failure to disclose exculpatory evidence?

¶30 The State interviewed NT a few days before trial. During that interview she made several contradictory statements about who sexually abused her, including that her father did not sexually abuse her. Nyna was present at the time, and reported this statement to Thompson and his attorney. However, Thompson claims that regardless of whether Nyna told him of the statement, the State had an independent duty to notify him. The State contends that it was not obligated to inform Thompson of evidence about which he already knew.

¶31 The suppression of evidence by the prosecution violates due process when the evidence is material to either guilt or punishment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland* (1963), 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed. 215. In Montana we have held that "[e]vidence is material if there is a reasonable probability that the result would have been different had the evidence been disclosed to the defense." *Kills on Top v. State*, 2000 MT 340, ¶ 23, 15 P.3d 422, ¶ 23, 57 St.Rep. 1444, ¶ 23.

¶32 The record shows that Thompson's attorney was aware of the statement at issue prior to trial. At the beginning of the trial, he brought the statement to the court's attention. The District Court asked what remedy he proposed. According to the record, Thompson's attorney replied that he merely wanted the right to use this information for cross-examination or impeachment purposes. He expressly told the judge that he did not want to stop the trial because of this error. Thereafter, the defendant was able to utilize this information to his advantage during the trial.

¶33 Therefore, we conclude there is no reasonable probability that the result would have been different had the prosecution informed Thompson or his attorney of NT's comments and we decline to set aside the conviction based on the State's failure to disclose her comments.

## ISSUE FOUR

¶34 Was the evidence sufficient to support the defendant's conviction?

¶35 The court reviews the sufficiency of the evidence to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Duffy*, 2000 MT 186, ¶ 50, 6 P.3d 453, ¶ 50, 57 St.Rep. 734, ¶ 50.

¶36 Thompson contends that sufficient evidence did not exist to support his conviction because the prosecution failed to show that he sexually molested his daughter during the specific dates in question.

¶37 Pursuant to § 45-5-502, a person commits sexual assault when "a person knowingly subjects another person to any sexual contact without consent . . . ." Sexual contact is defined as "the touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely . . . cause bodily injury or humiliate, harass or degrade another or . . . arouse or gratify the sexual response or desire of either person. § 45-2-101(66), MCA (1999).

¶38 According to the record, NT testified that she wanted to tell the truth so that her daddy could get help. She also testified that her daddy touched her in the wrong places when she was wearing her pajamas. NT's mother, while testifying on Thompson's behalf, confirmed that NT stated it was her father who touched her and that she asked for protection from

him. Nyna and her stepfather worked during the evenings when the family visited the grandparents in early November, 1998. Therefore, although there was only a short period of time when the defendant was alone with the children, an opportunity existed for him to sexually molest his daughter. When NT returned to foster care after the visit, her foster mother testified that she noticed a considerable difference in NT's behavior. NT was much more quiet and withdrawn. Although no physical signs of sexual abuse were found, the physician who examined NT testified that physical signs are generally not evident in fondling cases. Another expert, Barbara Bottomly, testified that she suspected sexual abuse and that it is common among children who have been sexually abused to make inconsistent statements regarding the identification of the perpetrator.

¶39 We conclude that there was sufficient evidence that any rational trier of fact could have found the elements of sexual assault beyond a reasonable doubt.

¶40 For these reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson specially concurs.

¶41 I concur with our discussion and resolution of Issues Two, Three and Four. I also agree with the result of Issue One and in what is said, as far as it goes.

¶42 In my view, our decision in *State v. Harris* (1991), 247 Mont. 405, 808 P.2d 453, imposed fairly tight parameters on the trial court's exercise of its discretion under § 46-16-503(2), MCA, including the requirement of certain procedural requirements. *See Harris,* 247 Mont. at 416-18, 808 P.2d at 459-60 (type of information that can be re-read to the jury includes limited factual testimony, not the entire testimony of the witness, and the trial judge is required to give a pre-deliberation instruction and respond in a certain

fashion to jury inquiries). Since it is clear that the requirements of *Harris* were not entirely followed in this case, my concurrence is with the understanding that the *Harris* strictures and requirements, nonetheless, remain the law.

¶43 More to the point, here, defense counsel did not object to the procedure used by the trial court. Accordingly, Thompson waived the claim of error he now raises on appeal. Sections 46-20-104(2), MCA, and 46-20-701(2), MCA. Moreover, given the fact that NT's testimony contained both exculpatory and inculpatory information and because the jury basically did not hear her testimony at all, I am not persuaded that Thompson suffered any prejudice to his substantial right to a fair trial. Section 46-20-701(2), MCA. Therefore, on these additional bases, I concur with our decision in Issue One.

/S/ JAMES C. NELSON