No. 99-312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 235

STATE OF MONTANA,

Plaintiff and Respondent,

v.

KENNETH WAYNE BAKER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifteenth Judicial District,

In and for the County of Sheridan,

The Honorable David Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Loren J. O'Toole II; O'Toole & O'Toole, Plentywood, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General; Helena, Montana

Steven Howard, Sheridan County Attorney; Plentywood, Montana

Submitted on Briefs: March 23, 2000

Decided: August 28, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Kenneth Wayne Baker (Baker) appeals from the judgment entered by the Fifteenth Judicial District Court, Sheridan County, on a jury verdict finding him guilty of sexual assault. We affirm.

¶2 Baker raises the following issues:

¶3 1. Did the District Court abuse its discretion in denying Baker's motion for a mistrial?

¶4 2. Did the District Court abuse its discretion by failing to grant Baker's motion for a continuance?

¶5 3. Did the District Court abuse its discretion in denying Baker's motion for a directed verdict?

## BACKGROUND

¶6 Baker was charged by information with the offense of sexual assault, in violation of § 45-5-502, MCA, for allegedly having nonconsensual sexual contact with a seven-year-old girl. Baker pleaded not guilty to the charge and a jury trial was held on October 26, 1998. At trial, the State of Montana (State) called Debra Johnson (Johnson), a community social worker, as its first witness in its case-in-chief. Johnson testified that she received a referral alleging that the victim in this case had been sexually assaulted by Baker. Johnson reported the referral to the Sheridan County Sheriff's Office (SCSO), which conducted an investigation into the allegations against Baker.

¶7 Johnson also testified that she assisted the SCSO with its investigation by participating in three interviews of the child victim. The first two interviews were directly related to the allegations against Baker and transcripts of those two interviews were provided to Baker pursuant to his pretrial discovery requests. The third interview of the victim related to

separate allegations that the victim also had been sexually abused by her natural father. Although Baker's name was mentioned in the third interview, he was not provided with either a videotape or transcript of this interview prior to trial. During cross-examination of Johnson, Baker informed the District Court that he had not received a transcript of the third interview with the victim and the court instructed Johnson to immediately retrieve the transcript of the interview from her file so Baker could be provided a copy. Baker did not request a continuance of the trial at that time.

¶8 The State then called Gretchen Blewett (Blewett), a deputy sheriff who assisted in the investigation and participated in the three interviews of the victim. Blewett testified on cross-examination that the third interview contained allegations against Baker as well as against the victim's father. At that point, Baker moved to continue the trial until he had an opportunity to review the transcript of the third interview. The District Court denied the motion, stating that Baker could review the transcript over a two-hour break for lunch and that the court was willing to address the motion again after the break should Baker determine he needed more time.

¶9 Following the lunch break and Baker's review of the third interview transcript, the parties met in chambers. Baker moved the District Court for a mistrial, arguing that the prosecution's failure to provide him with the transcript had denied him exculpatory evidence and impaired his ability to cross-examine the witnesses who had testified that morning. The State responded that a mistrial was not warranted because the third interview did not contain any exculpatory evidence and any adverse effect on Baker's ability to examine witnesses could be cured by recalling those witnesses for further cross-examination. After reviewing the transcript of the third interview, the District Court denied the motion for a mistrial. Baker then again moved to continue the trial for one week to prepare in light of the new information regarding the third interview. The court reserved its ruling on that motion until the end of the State's case-in-chief.

¶10 After the State rested its case, the parties met in chambers and Baker moved for a directed verdict, arguing that the State had failed to prove the elements of the offense of sexual assault. The District Court denied the motion. Baker did not renew his motion for a continuance or request a ruling on his earlier motion.

¶11 The jury found Baker guilty of sexual assault. The District Court sentenced Baker and entered judgment on the conviction and sentence. Baker appeals.

## DISCUSSION

¶12 1. Did the District Court abuse its discretion in denying Baker's motion for a mistrial?

¶13 We review a district court's ruling on a motion for a mistrial to determine whether the court abused its discretion. State v. Partin (1997), 287 Mont. 12, 17-18, 951 P.2d 1002, 1005. Where a defendant moves for a mistrial, the motion should be granted when the defendant otherwise would be denied a fair and impartial trial. Partin, 287 Mont. at 16-17, 951 P.2d at 1004-05.

¶14 Baker contends that, because the victim's third interview implicated a person other than Baker--namely, the victim's father--as having sexually abused her, the interview contained exculpatory information which the State was required to disclose to him prior to trial. He further contends that the District Court abused its discretion in refusing to declare a mistrial because the State's failure to provide him with this exculpatory information violated his right to due process and, as a consequence, denied him a fair trial.

¶15 The prosecution's failure to disclose evidence which is favorable to a defendant violates due process if the evidence is material to the defendant's guilt or punishment, regardless of the good or bad faith of the prosecution in failing to disclose. Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218. An intentional suppression of exculpatory evidence by the prosecution is a *per se* violation of due process. State v. Brown, 1999 MT 133, ¶ 24, 294 Mont. 509, ¶ 24, 982 P.2d 468, ¶ 24 (citation omitted). Here, however, it is undisputed that the State's failure to provide Baker with a transcript of the third interview was negligent, rather than intentional. Where the prosecution's suppression of evidence is negligent, it does not amount to a violation of due process unless the evidence is material, of substantial use, vital to the defense and exculpatory. Brown, ¶ 24 (citation omitted).

¶16 The victim alleged in the third interview that her father had sexually assaulted her. According to Baker, had the State disclosed this information prior to trial, he would have been better able to develop the defense that the victim had been sexually assaulted only by her father, rather than Baker, and that she had been coached by her father to accuse Baker of the offense. On this basis, he argues that the information in the third interview was exculpatory in nature and material to his defense. The State responds that its failure to disclose the interview to Baker prior to trial did not violate his right to due process because the information in the interview was not material to the case.

¶17 As stated above, in order to establish that his right to due process was violated by the State's failure to disclose the third interview prior to trial, Baker must prove that the information in the interview was material to his case. To satisfy this materiality requirement, Baker must prove there is a reasonable probability that, had the interview been disclosed to him prior to trial, the result of the trial would have been different. See, State v. Buckles, 1999 MT 79, ¶ 11, 294 Mont. 95, ¶ 11, 979 P.2d 177, ¶ 11; State v. Berger, 1998 MT 170, ¶ 49, 290 Mont. 78, ¶ 49, 964 P.2d 725, ¶ 49. A "reasonable probability" of a different result is shown where the State's failure to disclose evidence has the effect of undermining confidence in the outcome of the trial. Buckles, ¶ 11 (citation omitted); Berger, ¶ 49 (citation omitted).

¶18 As part of its case-in-chief, the State called Sheridan County Sheriff Mike Overland (Overland), who testified that he interviewed Baker regarding the allegation of sexual assault. Overland further testified that, during the interview, Baker admitted he had sexually assaulted the victim and related details of the incident. In light of this evidence, we conclude there is no reasonable probability that the outcome of the trial would have been different had the State disclosed the third interview prior to trial. As a result, Baker has not established that the information in the third interview was material to his case.

¶19 Baker having failed to meet his burden of establishing materiality, we conclude that his right to due process was not violated by the State's failure to disclose the third interview prior to trial. Consequently, we hold that the District Court did not abuse its discretion in denying Baker's motion for a mistrial.

¶20 2. Did the District Court abuse its discretion by failing to grant Baker's motion for a continuance?

¶21 During his cross-examination of Blewett, Baker moved the District Court for a continuance of the trial in order to review the transcript of the third interview of the victim. The court denied the motion, gave Baker a two-hour break in which to review the transcript, and stated its willingness to reconsider the motion after the break if Baker determined he needed more time to prepare. After the break, and following the District Court's denial of his motion for a mistrial, Baker again moved to continue the trial. The court reserved its ruling until the end of the State's case-in-chief, but never ruled on the motion. Nor did Baker ever renew, or request the court to rule on, the motion. Baker now asserts that the District Court abused its discretion in failing to grant a continuance of the trial. We review a district court's ruling on a motion for a continuance to determine

whether the court abused its discretion. State v. Root, 1999 MT 203, ¶ 13, 296 Mont. 1, ¶ 13, 987 P.2d 1140, ¶ 13.

¶22 Baker argues that the District Court should have granted him a continuance because he did not have the opportunity to use the information from the third interview of the victim during cross-examination of the two witnesses who testified prior to his receiving a transcript of the interview. He further argues that a continuance should have been granted so that he could interview the victim's father, who also was alleged to have sexually assaulted the victim. Baker's arguments are unpersuasive.

¶23 While it is true that Baker had not reviewed the interview transcript at the time he cross-examined Johnson and Blewett, he could have re-called those witnesses after reviewing the transcript to cross-examine them regarding the victim's third interview. He did not do so. Furthermore, Baker does not demonstrate what additional information he would have elicited from those witnesses had he been given additional time to prepare or how that information may have been important to his case.

¶24 Moreover, although Baker may not have had the opportunity to interview the victim's father prior to trial, he called the father to testify. The father's testimony was limited, however, because he was in jail at the time pending his own trial on charges relating to his alleged sexual assault of his daughter and he refused to answer most of Baker's questions, relying on his Fifth Amendment right to be free from self-incrimination. Baker fails to show how a continuance of his trial to have more time to prepare would have allowed him to elicit any additional information from the victim's father.

¶25 Finally, as noted above, the District Court reserved its ruling on Baker's motion for a continuance until the end of the State's case-in-chief. After the State rested its case, however, Baker did not renew, or ask the District Court to rule on, his motion for a continuance, thus tacitly conceding he did not need additional time to prepare. We conclude that Baker has failed to establish the necessity for a continuance of his trial. We hold, therefore, that the District Court did not abuse its discretion by failing to grant Baker's motion for a continuance.

¶26 3. Did the District Court abuse its discretion in denying Baker's motion for a directed verdict?

¶27 At the close of the State's case-in-chief, Baker moved the District Court for a directed verdict, arguing that the State had failed to prove the elements of the offense of sexual

assault. The court denied the motion and Baker asserts error.

¶28 The question of whether to direct a verdict lies within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Berger, ¶ 25. We review a denial of a motion for a directed verdict in the same manner as we review the sufficiency of the evidence to support a conviction, by examining the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could find the elements of the offense beyond a reasonable doubt. Berger, ¶ 25.

¶29 Baker was charged by information with the offense of sexual assault, in violation of § 45-5-502, MCA. Sexual assault is defined as "knowingly subject[ing] another person to any sexual contact without consent." Section 45-5-502(1), MCA. Baker does not dispute that the State presented evidence sufficient for a rational trier of fact to find beyond a reasonable doubt that he knowingly subjected the victim to sexual contact without consent. Instead, he points out that the information filed against him alleged that the victim in this case was less than 16 years old and that he was three or more years older than the victim, and contends that this allegation is an element of the offense of sexual assault which the State was required to prove at trial. He further contends that the State failed to present any evidence regarding his age or that he was three or more years older than the victim. On that basis, he argues that the State failed to prove the elements of sexual assault.

¶30 A person convicted of the offense of sexual assault may be sentenced to a term of up to six months in the county jail or a fine of up to $500, or both. Section 45-5-502(2), MCA. However, where the victim of a sexual assault is less than 16 years of age and the offender is three or more years older than the victim, the offender "shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 2 years or more than 100 years and may be fined not more than $50,000." Section 45-5-502(3), MCA. Section 45-5-502(3), MCA, merely sets forth age-related circumstances which enhance the punishment for sexual assault otherwise provided in § 45-5-502(2), MCA. Those age factors pertain only to the sentencing of a person convicted of sexual assault and, as a result, we conclude that Baker's age in relation to that of the victim is not an element of the offense of sexual assault the State was required to prove.

¶31 Baker having conceded that the State presented evidence sufficient to prove beyond a reasonable doubt that he knowingly subjected the victim to sexual contact without consent, we hold that the District Court did not abuse its discretion in denying Baker's

motion for a directed verdict.

¶32 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice W. William Leaphart, specially concurring.

¶33 I disagree with the Court's conclusion that "[s]ection 45-5-502(3), MCA, merely sets forth age-related circumstances which enhance the punishment for sexual assault otherwise provided in § 45-5-502(2), MCA." Rather, I would conclude that under the United States Supreme Court's recent decision, Apprendi v. New Jersey (2000), ___ U.S. ___, 120 S.Ct. 2348, ___ L.Ed.2d___, the difference in age between Baker and the victim was an element of the offense defined in § 45-5-502(3), MCA.

¶34 The United States Supreme Court's decision in *Apprendi* should leave no doubt that the age-related circumstances set forth in § 45-5-502(3), MCA, are an element of the felony crime of sexual assault. In *Apprendi*, the defendant, Apprendi, fired bullets into the home of an African-American family in a town in New Jersey. Apprendi was charged with shootings on four different dates and with the unlawful possession of various weapons. None of the charges referred to a New Jersey hate crime statute and none of them alleged that Apprendi had acted with a racial bias. Pursuant to a plea agreement, Apprendi pleaded guilty to two counts (3 and 18) of second-degree possession of a firearm for an unlawful purpose and one count of the third-degree offense of unlawful possession of an antipersonnel bomb. Under New Jersey law, a second-degree offense carried a penalty range of five to ten years. However, the state reserved the right to request that the court impose a higher "enhanced" sentence for one of the second-degree counts "on the ground that that offense was committed with a biased purpose" under New Jersey's hate crime statute. *Apprendi*, 120 S.Ct. at 2352.

¶35 The trial court held an evidentiary hearing concerning Apprendi's "purpose" in the shootings. The trial court found by a preponderance of the evidence that Apprendi's actions were undertaken with an intimidating purpose, as required by New Jersey's hate crime law, and held that New Jersey's hate crime statute applied. Apprendi was sentenced to a twelve- year term on count 18 and to shorter, concurrent sentences on the other two counts. *Apprendi*, 120 S.Ct. at 2352. Apprendi appealed, arguing in part that due process required that the state prove to a jury beyond a reasonable doubt the predicate finding of bias on which his hate crime sentence depended. New Jersey's Supreme Court affirmed his sentence. *See* Apprendi v. New Jersey (N.J. 1999), 731 A.2d 485. The United States Supreme Court granted cert.

¶36 The Court in *Apprendi* determined that "[a]t stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6." *Apprendi*, 120 S.Ct. at 2355. The *Apprendi* Court undertook a lengthy review of the history of the right to a jury verdict based on proof beyond a reasonable doubt and noted that "nothing in this history suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--*in imposing a judgment within the range prescribed by statute*." *Apprendi*, 120 S. Ct. at 2358 (emphasis added).

¶37 However, the Court observed that

> [i]f a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not--at the moment the State is put to proof of those circumstances--be deprived of protections that have, until that point, unquestionably attached.

*Apprendi, 120 S.Ct. at 2359. The Court went on to hold that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 120 S.Ct. at 2362-63.*

¶38 In a discussion that is critical for the present case, the *Apprendi* Court distinguished its

decision in McMillan v. Pennsylvania (1986), 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67, where the court approved a Pennsylvania statute under which "a fact that was not found by a jury . . . could affect the sentence imposed by the judge." *Apprendi*, 120 S.Ct. at 2360. Pennsylvania's "Mandatory Minimum Sentencing Act" provided that if a judge found by a preponderance of the evidence that a defendant "visibly possessed a firearm" in the commission of a specified felony, a defendant convicted of such a felony would be subject to a "mandatory minimum penalty of five years imprisonment." *Apprendi*, 120 S.Ct. at 2360. The *McMillan* Court commented that

> Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm.

*McMillan, 477 U.S. at 87-88, 106 S.Ct. at 2417, 91 L.Ed.2d at 77. The Apprendi Court noted that the McMillan decision did not "budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense and (2) that a state scheme that keeps from the jury facts that 'expos[e] [defendants] to greater or additional punishment' may raise serious constitutional concern." Apprendi, 120 S.Ct. at 2360 (citations omitted).*

¶39 Further, the Court in *Apprendi* characterized the distinction between sentencing factors and elements as "constitutionally novel and elusive." *Apprendi*, 120 S.Ct. at 2365 (citation omitted). In a footnote, the *Apprendi* Court determined that "sentencing factor" is not without meaning but added that

> [t]he term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

*Apprendi, 120 S.Ct. at 2365 n.19 (citation omitted).*

¶40 The *Apprendi* Court concluded that "the relevant inquiry is one not of form, but of

effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 120 S.Ct. at 2365. The Court determined that the effect of New Jersey's sentencing enhancement was "unquestionably to turn a second-degree offense into a first-degree offense. . . . The degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment." *Apprendi*, 120 S.Ct. at 2365. The *Apprendi* Court concluded that New Jersey's sentencing procedure was unconstitutional and "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Apprendi*, 120 S.Ct. at 2366.

¶41 In the present case, the Court's decision in *Apprendi* requires that we examine the *effect* of the age-related circumstances set forth under § 45-5-502(3), MCA, on the sentence that § 45-5-502(2), MCA, authorizes. Section 45-5-502, MCA, provides in pertinent part:

> **Sexual assault. (1) A person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault.**
>
> (2) A person convicted of sexual assault shall be fined not to exceed $500 or be imprisoned in the county jail for a term not to exceed 6 months, or both.
>
> (3) If the victim is less than 16 years old and the offender is 3 or more years older than the victim . . . *the offender shall be punished* by life imprisonment *or by imprisonment in the state prison for a term of not less than 2 years or more than 100 years* and may be fined not more than $50,000.

Section 45-5-502, MCA (emphasis added).

¶42 The effect of the District Court's determination that Baker was three or more years older than the victim (and that she was less than 16 years old) was two-fold. First, the District Court's finding elevated Baker's punishment from a maximum of six months to a minimum of two years imprisonment and a maximum of life imprisonment. Second, the District Court's finding changed Baker's conviction from a misdemeanor to a felony under Montana law. These consequences cannot be reconciled with the *Apprendi* Court's definition of sentencing factors when the District Court's finding did not support a specific

sentence within the range authorized by the District Court's finding that the defendant is guilty of violating § 45-5-502(2), MCA. *See Apprendi*, 120 S.Ct. at 2365 n.19. Moreover, the District Court's finding had "significant implications" both for Baker's very liberty, and for the "heightened stigma" associated with an offense of felony sexual assault that the legislature has selected as worthy of greater punishment. *See Apprendi*, 120 S.Ct. at 2365.

¶43 It is interesting to note that the *Apprendi* Court employed the right to a jury trial as the basis for its decision even though Apprendi entered into a plea agreement, thereby waiving his right to a jury trial. In contrast, Baker demanded and received a jury trial on the misdemeanor charge of sexual assault under § 45-5-502, MCA. Thus, in that he actually exercised his right to a jury trial, Baker fits within the Court's rationale more so than did Apprendi himself. Furthermore, the fact that the so-called "sentencing factor" transformed Baker's misdemeanor conviction into a felony punishable by life imprisonment or by imprisonment for a term of not less than two years, brings the Supreme Court's concern with liberty and the "heightened stigma associated with an offense the legislature has selected as worthy of greater punishment" into even sharper focus than under the New Jersey hate crime statute. The circumstances in Baker's case present a much stronger basis for the *Apprendi* rationale than did the circumstances before the Court in *Apprendi*.

¶44 I would hold that the age-differentiation requirement under § 45-5-502(3), MCA, is clearly an element of the felony offense of sexual assault, not a mere "sentencing enhancement" as the Court concludes. However, I would affirm the District Court's sentence on the ground that substantial credible evidence established that Baker was three or more years older than the victim when he sexually assaulted her.

/S/ W. WILLIAM LEAPHART