2010 WY 101

**Vanessa SORENSEN, Petitioner,**

v.

**STATE FARM AUTOMOBILE INSURANCE COMPANY, as Subrogee, Respondent.**

No. S–09–0174.

Supreme Court of Wyoming.

July 20, 2010.

Representing Petitioner: R. Todd Ingram of Clapp, Ingram & Olheiser, P.C., Casper, Wyoming.

Representing Respondent: Billie Ruth Edwards of Edwards & Johnson, LLC, Cheyenne, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] Vanessa Sorensen co-owned a vehicle with Jean C. Larramendy III. Jean Larramendy Jr. was driving the vehicle when he collided with another vehicle being driven by State Farm Mutual Auto Insurance Company's (State Farm) insured. The Sorensen/Larramendy vehicle was uninsured at the time.

[¶ 2] State Farm filed a complaint against Jean Larramendy III, Jean Larramendy Jr.

* Chief Justice at time of oral argument.

and Ms. Sorensen.[1] As to Ms. Sorensen, State Farm alleged that she violated Wyoming law by failing to maintain insurance on her vehicle, its insureds sustained damages as a result and it was subrogated to its insureds' right to recover the damages from Ms. Sorensen. Ms. Sorensen moved to dismiss the complaint on the ground that there is no common law duty to insure a vehicle and Wyo. Stat. Ann. § 31–4–103 (LexisNexis 2009), the criminal statute requiring motor vehicle owners to maintain liability insurance, does not create a cause of action for negligent failure to maintain insurance. The district court denied the motion, concluding § 31–4–103 establishes the minimum standard of care and imposed a duty on Ms. Sorensen to maintain proper insurance. Ms. Sorensen filed a petition for writ of review of the district court's order denying the motion, which this Court granted. We reverse.

## ISSUES

[¶ 3] In her petition, Ms. Sorensen asked this Court to review the following issues:

A. Whether Wyoming recognizes a cause of action, enforceable by private parties, for negligent failure to maintain liability insurance on a motor vehicle; and

B. Whether, as a matter of law, the failure to maintain liability insurance on a motor vehicle could be a legal cause of injuries and damages suffered in a motor vehicle crash.

## FACTS

[¶ 4] On December 3, 2004, the vehicle owned by Ms. Sorensen collided with the vehicle owned by State Farm's insureds. Ms. Sorensen was not in the vehicle at the time. Her vehicle was uninsured. State Farm's insureds sustained $36,521.61 in damages as a result of the collision. Under the terms of the uninsured motorist provision of its policy, State Farm was obligated to pay its insureds that amount.

[¶ 5] State Farm, as subrogee to its insureds' rights, then filed its complaint against Ms. Sorensen alleging that she was negligent in failing to insure the vehicle as required by Wyoming law, her negligence was a direct and proximate cause of its insureds' damages and it was subrogated to its insureds' right to recover the damages from Ms. Sorensen. Ms. Sorensen moved to dismiss the complaint on the grounds that, first, § 31–4–103 does not create a private right of action against the owner of an uninsured vehicle for damages sustained in a collision caused by the driver of the uninsured vehicle and, second, her failure to maintain insurance coverage on the vehicle was not the proximate cause of any damages sustained. State Farm asserted in response that § 31–4–103 created a private right of action for parties who sustain damages in collisions with uninsured vehicles, including insurance companies as subrogee of the party sustaining damages.

[¶ 6] After a hearing, the district court denied the motion to dismiss, holding that § 31–4–103 establishes the minimum standard of care and imposed a duty on Ms. Sorensen to maintain insurance on the vehicle involved in the collision; therefore, State Farm's complaint stated a claim upon which relief could be granted. Upon entry of the order denying the motion to dismiss, Ms. Sorensen filed a motion pursuant to W.R.A.P. 11 requesting the district court to certify the question to this Court. The district court denied the motion. Ms. Sorensen then filed a petition for a writ of review in this Court pursuant to W.R.A.P. 13. We granted the petition, finding that the questions raised in the petition involve controlling questions of law as to which there are substantial bases for differences of opinion and in which an immediate appeal from the dismissal order may materially advance resolution of the litigation. W.R.A.P. 13.02.

## STANDARD OF REVIEW

[¶ 7] The district court denied Ms. Sorensen's motion to dismiss pursuant to W.R.C.P. 12(b)(6), finding that State Farm stated a claim upon which relief can be

1. On State Farm's motion, the district court dismissed the Larramendys and the caption was reformed to reflect Ms. Sorensen as the only defendant.

granted. Our standards for reviewing rulings on Rule 12(b)(6) motions are well known:

(1) we accept the facts stated in the complaint as true and view them in the light most favorable to the [plaintiff]; (2) . . . [dismissal is appropriate] . . . if it is certain from the face of the complaint that the [plaintiff] cannot assert any facts that would entitle him to relief; (3) we employ the same standards and examine the same materials as did the district court; and (4) such review is *de novo*.

*Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo.2007), quoting *Becker v. Mason*, 2006 WY 143, ¶ 5, 145 P.3d 1268, 1270 (Wyo.2006).

## DISCUSSION

[¶ 8] The issue before us is whether a cause of action exists in Wyoming for negligent failure to maintain liability insurance. More specifically, we are asked to decide whether a party who alleges that he sustained damages in a collision caused by the driver of an uninsured vehicle has, in addition to his cause of action against the negligent driver, a cause of action in tort against the vehicle's owner for negligently failing to maintain liability insurance. The elements necessary to maintain a negligence claim in Wyoming are well-established. A plaintiff must prove: 1) the defendant was under a duty of care to protect the plaintiff from injury or loss; 2) the defendant breached the duty owed to the plaintiff; 3) the plaintiff suffered actual injury or loss; and 4) the defendant's breach of the duty proximately caused the plaintiff's injury or loss. *Andersen v. Two Dot Ranch, Inc.*, 2002 WY 105, ¶ 11, 49 P.3d 1011, 1014 (Wyo.2002).

In the present case, the duty alleged to have been owed was that of Ms. Sorensen to members of the general public to maintain liability insurance on her vehicle. It is undisputed that she did not maintain the required insurance; therefore, if a duty is found, its breach is established. The injury or loss alleged to have been proximately caused by the breach of the alleged duty is the $36,521.61 in property damage State Farm's insureds sustained in the collision caused by the driver of Ms. Sorensen's vehicle. Having paid its insureds that amount under the uninsured motorist provision of their insurance policy, State Farm seeks to be subrogated to any right they would have had to recover their damages from Ms. Sorensen because of her failure to maintain insurance.

[¶ 10] Considering the elements necessary to maintain a negligence action in the context of this case, in order to withstand dismissal of its complaint, State Farm had to establish that: 1) Ms. Sorensen was under a duty of care to protect its insureds from being unable to obtain compensation for their damages caused in the collision through an insurance policy covering her vehicle; 2) she breached the duty by failing to maintain liability insurance; 3) State Farm's insureds suffered the damages alleged; and 4) Ms. Sorensen's breach of the duty to maintain liability insurance proximately caused the insureds' damages. We begin our discussion with consideration of whether State Farm established the first element of its claim— that Ms. Sorensen was under a duty of care to protect its insureds from being unable to obtain compensation for their damages through an insurance policy covering her vehicle.

[¶ 11] The question of whether a duty exists and, if so, the scope of the duty is a question of law for the court. *Andersen*, ¶ 11, 49 P.3d at 1014, citing *Kobos By and Through Kobos v. Everts*, 768 P.2d 534, 541 (Wyo.1989). Absent a duty, there is no actionable negligence claim. *Bowen v. Smith*, 838 P.2d 186, 198 (Wyo.1992). A duty may arise by contract, statute or the common law. *Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1325 (Wyo.1995), citing *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52, 58 (Wyo.1974).

[¶ 12] There is no contract between Ms. Sorensen and State Farm's insureds giving rise to a duty. The parties agree also that there is no recognized common law duty to maintain insurance. Thus, we are concerned here with whether the duty asserted arises by statute or whether the common law should recognize such a duty because the relationship of the parties is such that the

law will impose an obligation on vehicle owners like Ms. Sorensen to act reasonably for the protection of others like State Farm's insureds. *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 10, 148 P.3d 8, 13 (Wyo.2006), quoting *Thomas By Thomas v. South Cheyenne Water and Sewer Dist.*, 702 P.2d 1303, 1307 (Wyo.1985). In deciding this issue, we note that Wyoming does not have an "owner liability" statute as some states do establishing liability on the part of a vehicle owner for the negligence of anyone operating it with the owner's express or implied permission. *Gill v. Schaap*, 601 P.2d 545, 547 (Wyo.1979). Also, this Court has said the owner of a vehicle who permits another to use it for his own purposes is not liable for the borrower's negligence in operating it. *Jack v. Enterprise Rent–A–Car Co. of Los Angeles*, 899 P.2d 891, 893 (Wyo.1995), quoting *Sare v. Stetz*, 67 Wyo. 55, 214 P.2d 486 (Wyo.1950).

[¶ 13] To determine whether the duty alleged arises from § 31–4–103, we apply our usual rules of statutory interpretation, which we have stated as follows:

> Statutory interpretation is a question of law. Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.
>
> A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.
>
> In interpreting a statute, we will not ignore other statutory provisions pertaining to the same subject but will, instead, consider all such provisions in pari materia.

*Horse Creek Cons. Dist. v. State ex rel. Wyoming Attorney General*, 2009 WY 143, ¶ 14, 221 P.3d 306, 312 (Wyo.2009) (citations omitted).

[¶ 14] The statute at issue in the present case is located in Chapter 4 of Wyoming's Motor Vehicle Act, §§ 31–4–101 through 31–4–104 (LexisNexis 2009). Chapter 4 is entitled "General Offenses and Penalties." In addition to making it a crime to fail to maintain liability insurance, Chapter 4 makes it unlawful to operate or permit the operation of a vehicle without a valid certificate of title, registration and license plates; alter a valid license plate; sell or transfer a vehicle without a certificate of title; make a false statement when applying for a registration or license plates; or forge or counterfeit a certificate of title or registration. Chapter 4 also sets out penalties for each of these offenses.

[¶ 15] The provision in Chapter 4 directly at issue in this case states in pertinent part as follows:

**§ 31–4–103. Failure to maintain liability coverage; penalties; exceptions.**

(a) No owner of a motor vehicle required to be registered shall operate or permit the operation of his motor vehicle without having in full force and effect a motor vehicle liability policy.... Violation of this subsection is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not less than two hundred fifty dollars ($250.00) nor more than seven hundred fifty dollars ($750.00), or both. On a second or subsequent violation of this subsection, the person may be fined not less than five hundred dollars ($500.00) nor more than one thousand five hundred dollars ($1,500.00), imprisoned for not more than six (6) months, or both. In addition to the fine or imprisonment imposed for a second or subsequent violation of this subsection, the judge shall require the defendant to deliver the registration and license plates of the vehicle involved to the county treasurer for the county where the citation was issued, and the registration and license plates shall be held by the county treasurer until such time as the judge determines that the defendant has met all obligations imposed by law.

(b) Any police officer ... issuing a citation for any moving violation ... or inspecting any vehicle, shall require the operator of any motor vehicle required to be registered to produce evidence of whether the operator or owner of the motor vehicle

has in full force and effect a motor vehicle liability policy.... If the operator cannot show written proof of financial responsibility, the driver shall have seven (7) days to produce such proof. Any operator or owner of a motor vehicle required to be registered who is not able to demonstrate evidence of compliance with subsection (a) of this section may be charged with violating that subsection. Additionally, the judge may order any driver failing to produce written proof of financial responsibility to pay restitution.... No operator or owner of a motor vehicle charged with violating this section shall be convicted if he produces in court one (1) of the following which was valid at the time of arrest or at the time the citation was issued:

(i) A liability insurance policy previously issued to him;

(ii) Evidence of a bond on file with the department in amounts provided by W.S. 31–9–102(a)(xi).

(c) Upon receipt of a notice of a conviction under subsection (a) of this section, the department shall require the person convicted to file and maintain, for a three (3) year period, proof of financial responsibility as required by W.S. 31–9–401 through 31–9–414. Failure to provide proof of financial responsibility within thirty (30) days after notification shall result in the suspension of the person's driver's license and nonresident operating privileges. The suspension shall remain in effect until the required proof of financial

responsibility is received by the department.

[¶ 16] Giving the words in the statute their plain and ordinary meaning, § 31–4–103 requires vehicle owners to maintain liability insurance on their vehicles. The failure to comply with the statutory requirement constitutes a misdemeanor punishable by imprisonment, a fine, or both. A second violation results in an increased penalty. Unless and until proof of insurance is provided, the owner of an uninsured vehicle must surrender the vehicle registration and license plates to the court. A police officer is authorized to request proof of insurance in the course of issuing a citation and, in the absence of such proof, charge the owner or operator with violating the statute. Upon conviction of violating the statute, the person must file proof of financial responsibility with the department of motor vehicles.

[¶ 17] By requiring vehicle owners to maintain liability insurance, § 31–4–103 reflects the legislature's intent to promote the public policy in favor of ensuring that all of those traveling on the roads in this state will be compensated for injuries they sustain in motor vehicle collisions.[2] Nothing in the plain language of the statute, however, suggests that in enacting the provision the legislature intended to impose a new *tort* duty owed by vehicle owners to the general public to maintain insurance. The plain language of the statute also does not suggest the legislature intended to provide a remedy for money damages for violations of the statute. Considering § 31–4–103 in pari materia with the

---

**2.** Wyo. Stat. Ann. § 31–10–101 (LexisNexis 2009) further demonstrates the legislative intent to promote this policy by requiring all insurance liability policies for bodily injury or death delivered or issued for delivery in Wyoming to include uninsured motorist coverage. Although the provision authorizes the named insured to reject the uninsured motorist coverage, it still reflects the legislature's efforts to protect those traveling in Wyoming from injuries sustained in motor vehicle collisions for which there is no means of compensation. The section provides as follows:

**§ 31–10–101. Required coverage; rejection**
No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor

vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as provided by W.S. 31–9–102(a)(xi), under provisions approved by the insurance commissioner for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The named insured may reject the coverage. Unless the named insured requests the coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer.

other provisions in Chapter 4, we find no suggestion of legislative intent to create a tort duty giving rise to a claim for money damages.

[¶ 18] When the legislature has intended a statute to create a new tort duty, it either has plainly stated that a violation gives rise to an action for damages, *see, for example*, Wyo. Stat. Ann. § 35–11–902(*o* ) (LexisNexis 2009) (providing that any person injured by a coal mining operator's violation of state regulations may bring an action for damages including attorney and expert witness fees), or has employed language leaving no room for doubt that the provision modifies the common law and imposes a duty not previously recognized, *see, for example*, the Residential Rental Property Act, Wyo. Stat. Ann. § 1–21–1201 through § 1–21–1211 (LexisNexis 2009) (clearly stating that landlords have a duty to maintain leased premises in a fit and habitable condition). In contrast, § 31–4–103 does not expressly abrogate the common law nor does it contain any language suggesting the legislature intended to create a tort duty giving rise to a claim of negligence. To read the statute as abrogating the common law and creating a tort duty would require us to presume the legislature intended that result without any supporting statutory language. As we have said:

> It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended unless the language employed clearly indicates such [intent].... The rules of common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.

*Merrill v. Jansma*, 2004 WY 26, ¶ 33, 86 P.3d 270, 285 (Wyo.2004), quoting *Kaycee Land and Livestock v. Flahive*, 2002 WY 73, ¶ 9, 46 P.3d 323, 327 (Wyo.2002). We conclude the legislature did not intend § 31–4–103 to impose a tort duty actionable in negligence for money damages for failing to maintain liability insurance.

[¶ 19] Our conclusion that the statute does not reflect a legislative intent to impose a tort duty for failure to maintain insurance, however, does not end the inquiry. The common law is dynamic and this Court is at liberty to recognize new common law torts when appropriate to meet society's changing needs. *Greenwalt v. Ram Restaurant Corp. of Wyo.*, 2003 WY 77, ¶ 12, 71 P.3d 717, 723 (Wyo.2003). Over the years, this Court has recognized new common law tort claims in a number of cases. *See, for example, Briefing.com v. Jones*, 2006 WY 16, 126 P.3d 928 (Wyo.2006), recognizing misuse or misappropriation of trade secrets as a common law tort; *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994), recognizing a cause of action for breach of the implied covenant of good faith and fair dealing; *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986), recognizing a cause of action for negligent infliction of emotional distress; *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo. 1983), recognizing a common law tort claim against a liquor vendor who unlawfully sells liquor to a minor who becomes intoxicated and injures a third party. We have also declined in a number of cases to recognize new common law tort claims. *Horn v. Wooster*, 2007 WY 120, 165 P.3d 69 (Wyo. 2007), declining to recognize a cause of action in negligence by an attorney against his co-counsel; *Andersen*, 2002 WY 105, 49 P.3d 1011, declining to impose a duty on livestock owners to keep livestock off highways along unfenced posted open range; *Sundown, Inc. v. Pearson Real Estate Co., Inc.*, 8 P.3d 324 (Wyo.2000), declining to recognize a cause of action for negligent nondisclosure.

[¶ 20] In those cases in which we have recognized new duties or tort claims, we sometimes have relied upon legislative enactments in doing so. *Merrill*, 86 P.3d at 286. In other cases, where there has been no legislative activity, we have recognized new tort claims by exercising our authority to shape the common law as appropriate for changing circumstances and the needs of society. *See, for example, McClellan*, 666 P.2d 408 (judicially abrogating the common law rule that the sale of alcohol was not the proximate cause of injury and adopting statutory provisions prohibiting the sale of alcohol to minors as the standard of care) and *Gates*,

719 P.2d 193. Consistent with our case law establishing the existence of a duty as the first element of a negligence claim, all of the cases in which we have considered whether to recognize a new common law negligence claim begin with discussion of whether a legal duty existed.

[¶ 21] In its decision letter, the district court began not by addressing whether a duty existed, but focused instead on whether § 31–4–103 established the standard of care a vehicle owner owes to third parties. In deciding that the provision established the standard of care, the district court relied on the Restatement (Second) of Torts § 286 (2002), which provides:

> The court may adopt as the standard of conduct of a reasonable [person] the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part:
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

Applying these factors, the district court concluded § 31–4–103 was intended to protect a class of persons that included State Farm's insureds from suffering injury or loss as a result of a vehicle owner's failure to maintain liability insurance.

[¶ 22] The difficulty with the district court's approach is that it determined the statute established the standard of care without first determining that a duty existed. The concepts of standard of care and duty are not synonymous. *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo. 1995). Before a statute can be said to establish a standard of care, there must be a legal duty to which the statutory standard of care can be applied. Thus, in deciding the issue presented, we address first whether § 31–4–103 should be construed to establish a common law duty actionable in negligence for failure to maintain liability insurance. Stated more broadly, we consider whether such a relationship exists between members of the public and a vehicle owner that the law will impose a duty actionable in negligence on the latter to maintain insurance for the protection of the former. *Killian v. Caza Drilling, Inc.*, 2006 WY 42, ¶ 8, 131 P.3d 975, 980 (Wyo.2006). In deciding that question, we consider the following factors:

> (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Gates*, 719 P.2d at 196.

[¶ 23] Weighing these factors, this Court has reached varying results when deciding whether the law supports the imposition of a new tort duty. In *Gates*, we held Wyoming law recognized a cause of action for negligent infliction of emotional distress because it was foreseeable that a boy's family would experience mental shock upon arriving on the scene shortly after a negligent driver struck and severely injured the boy while he was riding his bicycle; the degree of mental shock the family members suffered was certain; sufficient moral blame attached to the negligent driver to warrant allowing the family members to recover for the shock; and the impact of recovery on defendants, the insurance industry, and the public would be relatively minor.

[¶ 24] In *Pickle v. Board of County Comm'rs of Platte Co.*, 764 P.2d 262, 265 (Wyo.1988), we concluded the board of county commissioners owed subdivision applicants a duty to exercise reasonable care in processing and reviewing their application. Weighing the *Gates* factors, we said:

> It was clearly foreseeable that appellants could suffer injury if the Board allowed the subdivider to install an inadequate septic system, and the Board's acts or omissions

in the subdivision review process were sufficiently close to the injury suffered by appellants. The Board has not suggested that plaintiffs suffered no injury. With respect to moral blame, the Board's purported failure to adequately process the subdivision application evokes something less than moral outrage. On the other hand, it is likely that future harm could be prevented by the imposition of a duty of care in this instance. The burden on the defendant is slight—a duty to act reasonably is surely not onerous and is commonly applied to a wide range of activities. The consequences to the community and the court system are difficult to predict; suffice it to say that we do not envision a great number of plaintiffs racing to the courts to file similar claims following the publication of this opinion. The availability, cost and prevalence of insurance are valid concerns, but in this case they are not compelling. As we explained below, the possibility of recovery in this case depends upon the existence of insurance.

*Id.*

 In *Duncan v. Afton, Inc.*, 991 P.2d 739, 746 (Wyo.1999), we held that a collection company owed a duty of care to employees when collecting, handling, and processing urine specimens for substance abuse testing. Weighing the *Gates* factors, we concluded the company could foresee that improper collection and handling could contribute to a false positive result and injure an employee; the company could foresee that failing to inform an employer about proper interpretation and procedures when positive results occur could result in injury to an employee; the employee's termination was closely connected to the collection company's conduct; the employee was terminated; sufficient moral blame attached to the company's conduct because it benefited financially from providing the services, had direct control over the procedures used, had the ability to hire and train personnel to perform the services and could contract with the employer to ensure test results were properly interpreted; and holding the company accountable would likely prevent future harm and would not unduly burden the court system. *Id.* at 745–46.

 Weighing these same factors in *Andersen*, we declined to recognize a duty on the part of a livestock owner to prevent livestock from wandering onto public highways in posted open range. We said: motorists on such highways have a greater capacity to foresee the potential danger because open range signs are posted and the motorist has the opportunity to control the vehicle; there is little connection between a livestock owner grazing cattle on posted open range and a collision between a motorist and livestock; the exercise of the right to pasture cattle on open range is not the kind of conduct invoking an expanded duty of care essentially nullifying the open range doctrine; the plaintiffs' injuries were certain; no moral blame attaches to a livestock owner legally pasturing his cattle on open range; future harm could be prevented only by fencing, which would nullify the open range doctrine; imposing a duty on livestock owners to fence in their cattle would be a substantial burden; there are a small number of motorist/livestock collisions resulting in injury and they are a small percentage of all motorist collisions; insurance is likely available to livestock owners at a high cost while affordable insurance spreading the risk among a broad pool is widely available to motorists. *Andersen*, ¶ 44, 49 P.3d at 1025–1026.

 In *Erpelding v. Lisek*, 2003 WY 80, ¶¶ 19–29, 71 P.3d 754, 758–59 (Wyo.2003), applying the *Gates* factors, we held that professional counselors hired by an employer to perform a psychological evaluation of an employee for the benefit of the employer owed no duty to the employee. We concluded: it was not necessarily foreseeable that the counselor's evaluation would result in the employee's dismissal; the counselor's evaluation was not closely connected to the dismissal because several other factors influenced the employer's decision to dismiss the employee; it was certain the employee lost his job; there was no evidence the counselor's evaluation involved misconduct so as to justify a finding of moral blame; wrongful termination actions provide sufficient incentive to employers to hire competent counselors and prevent future harm; imposing a duty to an employee would place a substantial burden on counselors, impacting their objectivity;

the potential for a stream of litigation from imposing a new duty poses substantial consequences to the community and court system.

 [¶ 28] With these sample cases in mind, we turn to consideration of whether the parties' relationship in the present case is such that the law ought to impose a duty on Ms. Sorensen for the benefit of State Farm's insureds. Beginning with the first *Gates* factor, we conclude it was not necessarily foreseeable that Ms. Sorensen's failure to maintain liability insurance would result in State Farm's insureds being struck by a negligent driver and being unable to obtain compensation for their damages from him. Ms. Sorensen could not reasonably foresee whether the driver would cause a collision or whether he was insured or otherwise financially able to pay for the damages he caused. The first *Gates* factor does not weigh in favor of recognizing a tort duty to maintain liability insurance.

[¶ 29] We consider next the closeness of any connection between the damage State Farm alleged its insureds sustained and Ms. Sorensen's failure to maintain liability insurance. The damage State Farm alleged in its complaint was the $36,521.61 in property damages to its insureds' vehicle. These damages were closely connected with the driver's failure to exercise reasonable care in operating Ms. Sorensen's vehicle and his failure to maintain his own liability insurance or otherwise pay for the damages he caused. They were not connected to Ms. Sorensen's failure to maintain insurance. As with the first factor, the second *Gates* factor weighs against recognizing a tort duty.

[¶ 30] The parties do not dispute for purposes of deciding the issues presented that State Farm's insureds sustained damages to their car in the collision with Ms. Sorensen's vehicle. The third *Gates* factor is satisfied.

[¶ 31] For purposes of the fourth factor, we have said that serious misconduct may increase the scope of the persons who are entitled to protection afforded by the imposition of a duty. *Erpelding*, ¶ 25, 71 P.3d at 759. We also have said:

Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury.

*Larsen v. Banner Health System*, 2003 WY 167, ¶ 30, 81 P.3d 196, 205 (Wyo.2003). The driver of a vehicle is in the best position to prevent damages caused by a collision. The vehicle owner is in the position to prevent the damages that may result from a lack of insurance. However, the prevalence of uninsured motorist coverage reduces the chance of such harm. Any moral blame attached to Ms. Sorensen's conduct is not of sufficient magnitude to entitle State Farm's insureds to the protection afforded by imposing a new tort duty to maintain liability insurance. This factor weighs against imposing a duty to maintain insurance.

[¶ 32] The fifth *Gates* factor looks to the policy of preventing future harm. Imposing a tort duty to maintain liability insurance might prevent some vehicle owners from failing to maintain insurance. However, criminal sanctions are likely more effective in encouraging owners to obtain the required insurance. The legislature has also acted to prevent future harm by requiring liability insurance policies for bodily injury or death delivered or issued for delivery to Wyoming to include an uninsured motorist provision. *See* ¶ 17, n. 2 above. The fifth factor does not warrant imposing a duty actionable in tort to maintain liability insurance.

[¶ 33] Looking at the sixth factor, the burden placed on vehicle owners to maintain liability insurance is arguably relatively minor and we have said a defendant must pay for his wrongs. *Gates*, 719 P.2d at 197. However, the legislature has imposed a penalty for the wrong Ms. Sorensen is alleged to have committed. We are not persuaded that such a legal relationship exists between the owner of an uninsured vehicle and those harmed by another's negligent operation of the vehicle to warrant imposing the burden on the owner to pay for the independent wrongs of the operator. Although there may be positive consequences from recognizing a tort duty to maintain insurance actionable in negligence, we are not convinced they outweigh the negative consequences of imposing

tort liability on one individual for the more direct negligence of another.

[¶ 34] The final factor requires consideration of the availability, cost and prevalence of insurance for the risk involved. In this case, there is insurance covering the risk involved. The insurance policy State Farm issued to its insured entitled the insured to uninsured motorist coverage in the event of a collision with an uninsured vehicle. The premiums the insured paid for the policy undoubtedly were based in part on the fact that it included uninsured motorist coverage. Given the availability of insurance to cover the damages caused in the collision, the final *Gates* factor does not weigh in favor of creating of a new tort duty on the basis of § 31–4–103.

■■■ [¶ 35] As we have said before, duty is an expression of the sum total of those policy considerations that lead the law to say the plaintiff is entitled to protection. *Andersen*, ¶ 44, 49 P.3d at 1024, quoting *Gates*, 719 P.2d at 196. Absent a duty, there is no actionable negligence claim. *Bowen*, 838 P.2d at 198. Having balanced the factors set out in *Gates* for determining whether or not recognition of a tort duty is appropriate, we decline to recognize a new common law cause of action by a party sustaining damages in a motor vehicle collision against the owner of a vehicle involved in the collision for negligent failure to maintain liability insurance.

[¶ 36] We are not alone in reaching this result. Courts in other states have likewise rejected claims arising out of motor vehicle collisions against vehicle owners for failure to maintain liability insurance, although they have reached that result through different reasoning. In *Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004), for example, the Arkansas Supreme Court declined to impose civil liability on a motor vehicle owner solely for failing to insure his or her vehicle in part because the owner's "failure to insure the vehicle could never be the proximate cause of the accident and resulting injuries." *Id.* at 416. *See also Palermo v. Faure*, 1996 Mont. Dist. LEXIS 668, holding that violation of the mandatory insurance statute was not the proximate cause of the harm another sustained in a collision with the uninsured vehicle, and *State Farm Ins. Cos. v. Wood*, 58 Ohio App.3d 11, 567 N.E.2d 1040, 1041 (1989), holding the violation of the mandatory insurance statute was not the proximate cause of the damage suffered by State Farm's insured, to whose rights State Farm was subrogated.[3]

[¶ 37] Similarly, in *Hondros v. Morton*, 1995 WL 339068, 1995 Del.Super. LEXIS 209 (Del.Super.Ct. May 3, 1995), the court held the causal connection between an owner's failure to insure her vehicle and the medical bills another incurred in a collision involving the vehicle was too remote to constitute proximate cause. The *Hondros* court also concluded the legislature did not intend the mandatory insurance statute to protect third parties from medical expenses occurring as a result of a violation of the statute. In *Wise v. Crump*, 978 S.W.2d 1, 3 (Mo.Ct.App.1998), the court declined to recognize a cause of action under the financial responsibility statute, stating:

> While the statute is silent on the existence of a private cause of action, it does specify that any person who violates the statute is guilty of a criminal act, namely a class C misdemeanor. When the legislature has established other means of enforcement of a statute, we will not recognize a private civil action unless such appears by clear implication to have been the legislative intent.

---

**3.** A different Ohio court disagreed with *Wood*. In *Fontaine v. Hairston*, 2000 WL 145074, 2000 Ohio App. LEXIS 414 (Ohio Ct.App. 2000), the court characterized the "injury" as the inability to be compensated, not the actual collision, and concluded the injury was directly related to the duty imposed by the statute. Therefore, the court concluded, the breach of the duty was the proximate cause of the injury. More recently, however, the *Fontaine* analysis was rejected by yet another Ohio court in *Hundemer v. Partin*, 2007 Ohio 5631 (Ohio Ct.App. 2007) in which the court said:

> If the inability to recover under the statute is the injury ..., the injury is purely economic and the claim is prohibited under the economic loss rule [applicable in Ohio]. On the other hand, if the accident itself is the injury the failure to maintain insurance in compliance with the statute is not the proximate cause of the injury.

Here, instead of subjecting the vehicle owner to civil liability, the General Assembly has chosen to criminalize the failure to maintain financial liability. On this basis, we see no clear implication to create a private cause of action.

(Citations omitted).

[¶ 38] Our determination that § 31–4–103 does not give rise to a cause of action in negligence for failure to maintain liability insurance is based primarily on our conclusion that neither the statute nor the common law impose a tort duty on vehicle owners owed to the general public. Because there is no duty, there is no actionable claim for negligence, and a discussion of the issue of proximate cause is not required. We note, however, our agreement with the cases cited in the forgoing paragraphs in which other state courts concluded the failure to maintain insurance was not the proximate cause of the injury. We note further that Wyoming, like Ohio, follows the economic loss rule, which bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property. *Rissler & McMurry v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234 (Wyo.1996). Therefore, as in *Hundemer*, to the extent the injury State Farm alleged was its insureds' inability to recover under an insurance policy issued to Ms. Sorensen, the injury is purely economic and is prohibited under the economic loss rule.

[¶ 39] Reversed and remanded with instructions to dismiss the complaint for failure to state a claim.